Madden, Judge,
delivered the opinion of the court:
Plaintiff’s petition alleges in substance that it is a Delaware corporation; that from May 4, 1929, to June 30, 1936, it was lawfully engaged in operating a trans-isthmian passenger airplane service with its principal place of business in Balboa, Canal Zone; that on March I, 1929, Burgess, the then Governor of the Panama Canal Zone, issued to one Sexton Licenses Nos. 468 and 469, which permitted the licensee to occupy plots of land and water and to erect hangars and shops to be used in the contemplated business of operating an airline; that Sexton, by authority of the Governor, assigned the licenses to plaintiff. The licenses were for no specified period, but each required the payment of a rental of $100 per year during the time the license should be in effect. The licenses were expressly revocable “at any time * * * upon written notice to the licensee.” The petition further alleges that on May 4, 1929, the Governor granted plaintiff permission to operate airplanes in intra-Canal Zone commerce for one year; that plaintiff paid the rental for the occupancy licenses, and erected hangars and terminal facilities and expended in excess of $30,000 in organizing its airplane service; that it obtained renewals of its operating licenses without difficulty until 1934, and carried thousands of passengers, without accident or injury to any passenger.
In 1934, plaintiff alleges, the then Governor Schley began to pursue an arbitrary course of conduct which ultimately *600 drove plaintiff out of business; the Governor and his assistants imagined faults in plaintiff’s equipment, management, and personnel, and refused to issue operating permits to plaintiff except for short periods; by a letter dated February 11, 1935, the Governor charged plaintiff with “incompetent management, failure to maintain equipment properly, failure to maintain proper records, failure to establish a system of replacement of obsolescent airplanes, failure to carry adequate supplies and spare parts, insisting on unsound practice contrary to expert advice, and with removal of manufacturer’s data and identification plates from aircraft.” Plaintiff alleges that these charges were made in bad faith and were false and without justification. It alleges that other charged delinquencies were remedied, and that additional requirements imposed by the Governor were arbitrary and unreasonable.
The petition alleges further that on March 16, 1935, after a conference between plaintiff and representatives of the Governor, a memorandum was drawn up and the Governor on March 19 granted plaintiff permission to operate from March 20 to December 31,1935, in strict compliance with the provisions of the memorandum; that plaintiff “bought a new plane, ten (10) Army major overhaul Hornet motors, and a set of Hamilton wings at a cost of about $14,100;” that on January 1, 1936, plaintiff was granted permission to operate for a period of one year subject to the conditions of the March 19 permission, and subject to the further condition that all Hamilton aircraft “then in the possession of plaintiff either be retired from service or undergo complete major overhaul on or before July 1, 1936.”
Plaintiff alleges that the last-stated condition was arbitrary and unreasonable; that its Hamilton craft were airworthy and did not need a complete major overhaul; that on June 20,1936, the Governor notified plaintiff that its present permit to operate would be terminated on July 1, 1936, unless the condition concerning the Hamilton aircraft stated in its permit was complied with by that date; that on June 27, plaintiff by letter protested against the proposed action; that on June 30, 1936, the Governor revoked the licenses of all Hamilton aircraft and terminated plaintiff’s permit on *601 the ground that it could not offer satisfactory flying service to the public with the limited facilities available [apparently meaning after the Hamilton craft had been retired]. The petition alleges that on July 2,1986, plaintiff was notified that in view of the fact that it had no permit to operate, its land licenses Nos. 468 and 469 were revoked, and that all its improvements should be removed by October 1, 1936; that on August I, plaintiff by letter protested the termination of both its operating permit and land licenses; that since July 1, 1936, plaintiff has not been permitted to operate its air service; that after that date defendant, granted to another company a permit to operate such a, service; that the other company’s planes are older than the planes plaintiff used; that by these revocations the defendant has in effect taken plaintiff’s trans-isthmian airplane business, planes, hangars, and other equipment; that the value of the leases revoked is $50,000, the value of the business $15,000, and the value of the hangars, planes, and other equipment, less what plaintiff has received from sales of parts, is $100,000, making a total of $225,000, which plaintiff claims as damages.
Plaintiff contends that its petition, alleging the foregoing facts, states a cause of action for breach of an implied contract. The defendant contends that plaintiff’s petition attempts to state a cause of action in tort, over which this court has, of course, no jurisdiction.
If plaintiff’s land licenses and the operating permit were contracts at all, they were expressly revocable, the land licenses unconditionally so, and the operating permit upon the nonperformance of a condition which plaintiff did not perform. We know of no doctrine by which an expressly revocable license becomes irrevocable by the expenditure of money by the licensee in reliance on it. There is nothing to rely on except the license, which by its very terms is revocable.
If the arbitrary and unreasonable revocation of an expressly revocable license is a wrong cognizable by law, it is a noncontract wrong, a tort. But if the law recognizes such a wrong, and if it was here committed, either by the defendant through the Governor, or by the Governor out *602 side the scope of his authority, this court has no jurisdiction to repair it.
The defendant’s demurrer is sustained and plaintiff’s petition dismissed.
It is so ordered.
Jones, Judge: Whitaker, Judge; Littleton, Judge; and Whalet, Chief Justice, concur.